IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

CHRISTINA TARGONSKI,              )
                                 )
            Plaintiff,            )
                                 )
v.                               )        No. 3:11-CV-269
                                 )
CITY OF OAK RIDGE,               )
                                 )
                                 )
            Defendant.           )

## MEMORANDUM OPINION

This civil rights action is set for trial on February 13, 2013.  Now before the

court are sixteen motions in limine filed by the defense [docs. 37-52].  In addition, the

defense moves for a pretrial conference to address the pending motions [doc. 54].  Plaintiff

has responded to the motions in limine [doc. 59], and the defense has submitted a reply [doc.

60].

Also before the court is a six-pronged motion in limine filed by plaintiff [doc.

56].  Defendant has responded to that filing.

I.

*Pertinent Background*

The facts underlying this employment dispute were summarized at length in

the court's summary judgment ruling [doc. 22] and will be referenced herein only to the

extent necessary to address the instant motions.  Plaintiff's complaint contained twelve

counts: hostile work environment; retaliation; disparate treatment; harassment; constructive discharge; extreme and outrageous conduct; negligent infliction of emotional distress; intentional infliction of emotional distress; negligent hiring; negligent supervision; negligent training; and gross negligence. The court granted defendant's summary judgment motion in part, dismissing ten of the twelve claims. An eleventh claim (harassment) was noted by the court to be simply a component of plaintiff's other Title VII claims, as opposed to a free-standing cause of action.

Therefore, in accordance with the court's summary judgment ruling, only one claim remains for trial - hostile work environment under Title VII. Regarding that count, the court has explained,

> A plaintiff may show a violation of Title VII via a hostile work environment claim without having to prove that she suffered an "adverse employment action." *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). The elements of a *prima facie* hostile work environment claim are: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment was based on the employee's gender; (4) the harassment created a hostile work environment; and (5) *respondeat superior* liability. *Clark v. United Parcel Serv.*, 400 F.3d 341, 347 (6th Cir. 2005). Regarding the fifth prong, "[a]n employer is liable if it knew or should have known of the charged [coworker] harassment and failed to implement prompt and appropriate corrective action." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999) (citation and quotations omitted).

[Doc. 22, p. 15-16]. With that framework in mind, the court will address the pending motions in turn.

## II.

*Analysis*

### A. Defendant's First Motion in Limine

Defendant moves to exclude any reference or evidence pertaining to the EEOC's investigation of plaintiff's complaints [doc. 37].  Plaintiff's exhibit list includes her EEOC charge (item 2), her EEOC intake questionnaire (item 14), and letters to and from an EEOC investigator (items 11, 12, and 15).

In response to the motion, plaintiff mentions three ways in which her EEOC file is purportedly relevant: (1) the filing of her EEOC charge evidences that she complied with Title VII's procedural requirements; (2) her allegation that defendant "was petitioning to have my certification revoked" is evidence of a hostile work environment; and (3) defendant's response to the EEOC is probative of defendant's "good faith."  These arguments are without merit.

First, plaintiff's compliance with Title VII's procedural hurdles is not an issue in this trial.  Second, plaintiff alleges that defendant "was petitioning to have my certification revoked" a few weeks prior to December 30, 2010, which would have been several months after she quit her job.  Plaintiff offers no explanation as to how this issue could be relevant to a purported hostile work environment from several months in the past.  In fact, when she notified the EEOC by letter, she deemed the certification revocation issue "one more case of retaliation to report to you."   However, plaintiff's retaliation claim in this court has been

dismissed.

Lastly, plaintiff offers no explanation as to how the defendant's "good faith" in dealing with the EEOC would be relevant to her hostile work environment claim - the only claim that will be in front of the jury. The sole case cited by plaintiff - *Lampley v. Onyx Acceptance Corp.* - involved falsified documents and "trumped-up charges" by the employer to the EEOC. *See* 340 F.3d 478, 483 (7th Cir. 2003). Plaintiff points to no similar happenings in this case. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Plaintiff's EEOC charge complained of retaliation in addition to hostile work environment. Because the retaliation claim in this case has been dismissed, the EEOC investigation pertains at least in part to irrelevant matters. Further, plaintiff will be available to testify at trial, so it is unclear to the court why admission of EEOC documents would be necessary or what probative value those documents would have. *See Sherman v. Chrysler Corp.*, 47 Fed. App'x 716, 723 (6th Cir. 2002). In her motion response, plaintiff has failed to persuasively explain why any EEOC evidence should be admitted. The court therefore concludes that any probative value of evidence relating to the EEOC investigation would be substantially outweighed by the danger of unfair prejudice to the defense, confusion of the issues, misleading the jury, undue delay, wasted time, and needless presentation of cumulative evidence. *See* Fed. R. Evid. 403.

Defendant's first motion in limine will therefore be granted. Plaintiff shall not attempt to introduce any evidence or testimony pertaining to the EEOC's investigation of her complaints.

## B. Defendant's Second Motion in Limine

Defendant moves to exclude "any reference to an investigation by this Defendant and/or complaints from Plaintiff arising out of purportedly harassing phone calls she received in January of 2010 from a blocked telephone number" [doc. 41]. The motion will be granted.

In her pretrial theory of the case, plaintiff contends that the alleged hostile work environment resulted, in part, from "having harassing phone calls made to her." [Doc. 29, p.2]. The court discussed this issue in its summary judgment ruling:

> In January 2010, plaintiff also complained to Sergeant Tedford that she had received six unwanted calls on her cell phone "with heavy breathing and giggling," perhaps "having been made by a male disguising his voice in a manner to sound scary." The record does not indicate that the calls were sexual in nature. Sergeant Tedford opened a criminal investigation and subpoenaed plaintiff's cell phone records in order to identify the caller.

> . . .

> For unknown reasons, plaintiff's cell phone records were not received by defendant until May 14, 2010. The records showed that the calls were actually placed from the phone of Ms. Bridges [ a non-employee friend of plaintiff's]. On June 17, 2010, Bridges appeared at the police department to be interviewed by Sergeant Tedford. However, Bridges was accompanied by plaintiff and refused to be interviewed outside of plaintiff's presence. Sergeant Tedford and Captain Mike Uher explained to plaintiff that it would be inappropriate for her to be present during the interview since she was the victim of the alleged crime. Plaintiff admittedly became agitated. Bridges refused to be

interviewed alone, and the investigation was closed.

[Doc. 22, p.2-3].

Plaintiff will not be permitted to discuss the harassing phone calls at trial because the issue is irrelevant to her gender-based hostile work environment claim. The phone calls were placed from the phone of a person not employed by defendant. Defendant investigated the complaint, but that investigation was ultimately thwarted by plaintiff's interference and her friend's non-cooperation. The phone calls have not been shown to have any relevance to plaintiff's gender-based claim *against the defendant*. *See* Fed. R. Evid. 401. Even if relevant, proof on this issue would be excluded because any conceivable probative value is substantially outweighed by unfair prejudice to the defendant, potential confusion of the issues, misleading of the jury, undue delay, and waste of time. *See* Fed. R. Evid. 403. Plaintiff's response to this motion gives the court no reason to conclude otherwise. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Defendant's second motion in limine will be granted. Plaintiff will not be permitted to offer any proof regarding the alleged January 2010 harassing telephone calls.

C. Defendant's Third Motion in Limine

Defendant moves to exclude "any reference to lost wages, back pay, front pay, and constructive discharge, and any testimony from Plaintiff and/or other witnesses that

6

Plaintiff was 'forced to resign'" [doc. 38]. The motion will be granted.

At summary judgment, the court dismissed plaintiff's constructive discharge claim *and* ruled that she was not subjected to an adverse employment action such as termination. [Doc. 22, p. 10-14]. Plaintiff's contention in her pretrial theory of the case, that she was "forced to resign," disregards the court's prior ruling.[1] Because plaintiff was neither terminated nor constructively discharged (nor "forced to resign"), damages for lost wages are not available to her. *See, e.g., Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 767 (6th Cir. 2008).

The court has reviewed the cases cited by plaintiff in opposition to the motion and does not find that authority persuasive. *Thurman v. Yellow Freight Systems, Inc.* was a failure to hire or promote case, thus front and back pay were at issue. *See* 90 F.3d 1160, 1164, 1169-70 (6th Cir. 1996). Moreover, the *Thurman* panel observed that back pay is not appropriate when an employee "suffers a 'wilful loss of earnings.'" *Id.* at 1168-69 (citation omitted). Similarly, *Albemarle Paper Co. v. Moody* was a failure to promote case, 422 U.S. 405, 409 (1975). Back pay was thus at issue, as opposed to the present litigation in which the plaintiff voluntarily quit. Further, the *Albemarle* Court recognized "that there may be cases calling for one remedy but not another." *Id.* at 416.

Defendant's third motion in limine will be granted. No testimony or evidence will be permitted referring to plaintiff's lost wages, back pay, front pay, constructive discharge, termination, or the notion of plaintiff having been "forced to resign." Further,

---

[1] Disappointingly, plaintiff in her response brief again alludes to the trial relevance of "being 'forced to resign.'"

although the parties have stipulated to plaintiff's rates of pay while working for the defendant and at her subsequent job, that information is irrelevant and will not be provided to the jury.

## D. Defendant's Fourth Motion in Limine

Defendant moves to "preclude the Plaintiff from testifying about or offering evidence of rumors, including testimony from Plaintiff that some other person told her they heard a rumor" [doc. 39]. At its core, this case is about plaintiff's claim that defendant responded inappropriately to her complaints that a fellow police officer was spreading false sexual rumors about her. Defendant argues that "any testimony or evidence" regarding rumors should be excluded.

The court discussed this issue in its summary judgment ruling:

> The court agrees that much of this evidence is inadmissible and irrelevant. Generally, plaintiff's testimony that some other person told her they heard a rumor is hearsay. *See United States v. Blackwell*, 459 F.3d 739, 755 (6th Cir. 2006). The testimony is hearsay because it is offered in this case to prove the existence of the rumors. *See id.* As such, most of plaintiff's rumor testimony is inadmissible and has not been considered by the court. Moreover, some of the rumors are not based on her gender (for example, being called "crazy," "nutty," or "worthless") and would be irrelevant even if admissible.

[Doc. 22, p.18]. However, the court went on to clarify that not all of the rumor evidence in this case is hearsay, citing the following examples:

> 2. Plaintiff testified that Sergeant Tedford told her that Officer Thomas was spreading rumors that she had invited Officer Thomas to an orgy, and that she was distributing nude photos of herself "to whoever wanted them." This statement is not hearsay. Sergeant Tedford was plaintiff's supervisor and it appears that he was investigating the rumors. *See* Fed. R. Evid. 801(d)(2)(D) (A statement offered against a party, "made by the party's agent or employee on a matter within the scope of that relationship and while it existed," is not

hearsay.).

3. Plaintiff testified that Officer Criswell said directly to her, "I heard you like to swing.  Maybe we can get together sometime.  I know girls that you will like."  This evidence supports the existence of the workplace rumors.

4. Plaintiff testified that Captain Uher called her into his office "six or seven times to explain a rumor that had been going around."  These rumors included "do I have naked pictures of myself or am I inviting people to orgies at my house."  As with Sergeant Tedford, this testimony is not hearsay.  *See* Fed. R. Evid. 801(d)(2)(D).

[Doc. 22, p.19] (footnote omitted).  Therefore, defendant's request to exclude "any" rumor evidence is overbroad.  *See also Southerland v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 125 F. App'x 14, 22 (6th Cir. 2004) (Evidence that supervisors had heard rumors was not offered to prove the truth of the matters asserted in the rumors.  Instead, the evidence was offered to show that the supervisors had knowledge of the problem.  The rumor evidence was thus admissible.).

The court additionally notes defendant's argument that the probative value of any relevant, admissible rumor evidence would be substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.  This argument is not well-taken.  *Admissible* rumor evidence is highly relevant to central issues in this case.  The fact that certain evidence might not be favorable to the defense does not render it unfairly prejudicial.

For these reasons, the defendant's fourth motion in limine will be granted in part and denied in part as discussed herein.

## E. Defendant's Fifth Motion in Limine

Defendant moves to exclude "all reference to an incident that allegedly occurred at Rocky Top Market in the summer of 2010 in which Plaintiff claims she was 'written up'" [doc. 40]. Defendant specifically objects to item 22 on plaintiff's exhibit list, a "Memo to Plaintiff from Brad Jenkins Dated June 18, 2010."

The court has previously discussed this issue in its summary judgment ruling. [Doc. 22, p. 12]. Regarding her now-dismissed disparate treatment claim, plaintiff argued that she was subjected to an adverse employment action when she was "written up" for allegedly loitering at a Rocky Top Market, while a male officer engaging in similar conduct was not written up. The court ruled that this alleged disciplinary action did not constitute an adverse employment action.

In response to the instant motion, plaintiff correctly points out that harassing behavior can evidence a gender-based hostile work environment even when the behavior is not sexually explicit. *See, e.g., Williams v. Gen. Motors*, 187 F.3d 553, 565 (6th Cir. 1999). Plaintiff will therefore be permitted to explore her theory that a male coworker was not disciplined for engaging in the same misconduct at the Rocky Top Market. That this evidence could potentially be unfavorable to the defense does not automatically mean that a danger of unfair prejudice substantially outweighs the probative value under Rule 403. Defendant's fifth motion in limine will therefore be denied.

## F. Defendant's Sixth Motion in Limine

Defendant moves to exclude "all reference or mention by Plaintiff, witnesses called on her behalf and/or Exhibits offered into evidence, to allegations that officers of the Oak Ridge Police Department violated citizens' civil rights, used racial slurs when referring to arrestees and/or made unlawful or illegal arrests" [doc. 42]. Plaintiff claims to have overheard officers making derogatory comments regarding African-Americans, or arresting persons for disorderly conduct simply because they laughed at an officer. Such evidence is irrelevant to plaintiff's remaining claim - that she had to endure a hostile work environment on the basis of her gender. Plaintiff's response to the motion does not offer any valid grounds for the introduction of such evidence.

Further, even if this evidence had any relevance, the probative value would be substantially outweighed by the danger of unfair prejudice and confusion of the issues. Defendant's sixth motion in limine will be granted.

## G. Defendant's Seventh Motion in Limine

Defendant moves to exclude any testimony or evidence pertaining to plaintiff's worker's compensation claim [doc. 43]. In response to this and other pending motions, plaintiff has provided the court with more than five pages of hornbook discrimination law but has made no effort to explain how her workers compensation claim fits into any of that authority. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the

court to . . . put flesh on its bones.").

The court notes that in plaintiff's resignation letter she claimed that the alleged hostile work environment "has gotten so bad that I have filed a worker's compensation claim for psychological injuries." The meager relevance of that statement is substantially outweighed by danger of unfair prejudice to the defense, confusion of the issues, and wasted time. Plaintiff can testify that the work environment caused her to suffer psychological injuries. Mention of her workers compensation claim is therefore unnecessary. Plaintiff has articulated no persuasive reason why defendant's seventh motion in limine should be denied. That motion will accordingly be granted. Plaintiff shall offer no evidence or testimony regarding her workers compensation claim.

H. Defendant's Eighth Motion in Limine

Defendant moves to exclude item 18 on plaintiff's exhibit list, a "Resignation Document from KPD" [doc. 44]. The court has reviewed the challenged document, in which plaintiff briefly states only that she resigned from her employment with the City of Knoxville effective August 2, 2006, in order to start her own business and raise her son.

In response to the motion, plaintiff concedes that she does not currently plan to use this exhibit "as long as she is able to testify as to her previous work history and the reasons she left." In any event, the document is irrelevant and will be excluded. Plaintiff's resignation from one police department in 2006 has nothing to do with her claim that she was subjected to a gender-based hostile work environment in 2009 and 2010 while employed by

a different police department.  Defendant's eighth motion in limine will be granted.

Plaintiff's "Resignation Document from KPD" will not be introduced at trial.

## I. Defendant's Ninth Motion in Limine

Defendant moves to exclude items 16 and 17 on plaintiff's exhibit list, which are defendant's initial and supplemental Rule 26(a)(1) disclosures [doc. 45].  It is not this court's practice to allow the use of 26(a)(1) disclosures as evidence and, in any event, the court questions what relevance the disclosures themselves could possibly have to plaintiff's case.

In response, plaintiff states that she "does not intend to use said documents, as long as she is able to cross examine and/or impeach Defendant using 'relevant' documents." The court can at this point only take defendant's ninth motion in limine under advisement.

## J. Defendant's Tenth Motion in Limine

Defendant moves to exclude item 13 on plaintiff's exhibit list, a "Memo to David Beams from Shannah Newman Dated September 1, 2010" [doc. 46].  The motion will be granted.

The challenged internal memorandum merely states that plaintiff resigned from her employment with defendant on September 1, 2010 - a fact to which the parties stipulate in their pretrial order.  In light of that stipulation, the memorandum's meager relevance (if any) is substantially outweighed by the dangers of wasted time and needless presentation of cumulative evidence.  *See* Fed. R. Evid. 403.

In response to the motion, plaintiff fails to offer any persuasive or coherent justification for the admission of this document. Defendant's tenth motion in limine will be granted. Plaintiff will be prohibited from using the "Memo to David Beams from Shannah Newman Dated September 1, 2010" at trial.

## K. Defendant's Eleventh Motion in Limine

Defendant moves to exclude item four on plaintiff's exhibit list, which is identified as "Pages 13-2 and 13-3 of Ordinance" [doc. 47]. The motion will be denied.

According to defendant, the challenged pages are taken from the City of Oak Ridge's Administrative Policy and Procedure Manual. At section 13.5, the manual sets forth the city's policy of opposition to harassment, including gender-based harassment as well as conduct resulting in a "hostile or offensive working environment."

At issue in this case is whether plaintiff was subjected to a hostile work environment because of her gender and whether defendant appropriately responded to the problem. Evidence that defendant has an anti-hostile work environment policy is not at all irrelevant to the trial issues in this case. Further, that relevance is not substantially outweighed by any of the concerns set forth in Federal Rule of Evidence 403. Defendant's motion to exclude plaintiff's use of "Pages 13-2 and 13-3 of Ordinance" will be denied.

## L. Defendant's Twelfth Motion in Limine

In a similar vein, defendant moves to exclude item 5 on plaintiff's exhibit list, "Pages 36 to 38 of Police Department Policies" [doc. 48]. Those pages set forth the City of

Oak Ridge's procedures for addressing complaints of sexual harassment.

Again, at issue in this case is whether plaintiff was subjected to sexual harassment arising to the level of a hostile work environment and whether defendant appropriately responded. While by no means dispositive, evidence of defendant's procedures for addressing sexual harassment (and, by extension, evidence of whether those procedures were followed) is relevant to the single claim remaining for trial in this case. That relevance is not substantially outweighed by any of the concerns set forth in Federal Rule of Evidence 403. Defendant's motion to exclude "Pages 36 to 38 of Police Department Policies" will be denied.

## M. <u>Defendant's Thirteenth Motion in Limine</u>

Plaintiff's exhibit list includes "Defendant's Responses to Plaintiff's Interrogatories and Request to Produce." Defendant "moves to exclude all irrelevant and inadmissible portions of its responses to the Plaintiff's Interrogatories and Requests for Production of Documents" [doc. 49].

The court appreciates defendant's concern that many of its interrogatory responses pertain to claims that have now been dismissed. However, the court cannot undertake a review of each response at this time because those documents have not been filed. Even if they had been filed, a review would be a waste of judicial resources, as the court does not know which - if any - interrogatory responses plaintiff intends to use.

In response to the motion, plaintiff states that she "has no intention of using portions of the written discovery that has [sic] nothing to do with her Hostile Work Environment claim." At this point, the court can only restate the obvious: irrelevant and inadmissible proof will not be allowed at trial. The defendant's thirteenth motion in limine must be taken under advisement.

### N. Defendant's Fourteenth Motion in Limine

Defendant moves to exclude item 7 on plaintiff's exhibit list, a "Probationary Monthly Observation Report Dated 7/26/2009" [doc. 50]. The motion will be granted.

It is plaintiff's theory that, because of her gender, she was subjected to a hostile work environment beginning in September 2009. More than one month before that, the probationary report describes her as a helpful, polite, and positive worker who sometimes drives at excessive speeds. These facts are irrelevant to plaintiff's remaining claim.

In response to the motion, plaintiff contends that the report is relevant to show that she was "at one time" a good employee. The court again notes, however, that plaintiff's disparate treatment claim has been dismissed, so she is not in need of evidence to prove her job qualification. Plaintiff also contends that the report is relevant to show that "at one time" she enjoyed her job. Plaintiff can, however, testify to that fact. Even if probative value were present in the probationary report, the court would exclude it because dangers of confusing the issues and misleading juror sympathies would substantially outweigh any relevance. Defendant's fourteenth motion in limine will be granted.

O. <u>Defendant's Fifteenth Motion in Limine</u>

Defendant moves to exclude item 9 on plaintiff's exhibit list, an undated typewritten "Statement to Bob Fowler" [doc. 51]. Mr. Fowler is apparently a newspaper reporter, and the challenged four-paragraph statement is (according to defendant) likely a sort of press release issued by plaintiff.

The court has reviewed the statement. Much of it is irrelevant, such as plaintiff's allegations that she was "retaliated against" and "forced to quit my job." Again, plaintiff's retaliation and constructive discharge claims are no longer a part of this case.

In response to the motion, plaintiff again contends that the evidence would be relevant to show that she was "at one time" a good employee who enjoyed her job, and to show "her state of mind when she wrote the statement to Bob Fowler." To the extent that plaintiff's statement to Mr. Fowler would have any relevance whatsoever, plaintiff will be present at trial and will be able to offer live testimony. The written statement overflows with reference to irrelevant issues. Any probative value is therefore substantially outweighed by the danger of undue delay, prejudice, wasted time, needless presentation of cumulative evidence, and confusion of the issues.

Defendant's fifteenth motion in limine will be granted. Plaintiff may not use her "Statement to Bob Fowler" at trial.

## P. Defendant's Sixteenth Motion in Limine

Defendant moves to exclude item 10 on plaintiff's exhibit list, a "Chronological Record of Police Career" [doc. 52]. Neither defendant nor the court have seen this document, but defendant nonetheless argues that it could not possibly have any relevance to plaintiff's sole remaining claim.

In response to the motion, plaintiff states that she does not currently plan to use this exhibit "as long as she is able to testify as to her previous work history and the reasons she left." It will indeed be appropriate for plaintiff to provide brief introductory testimony regarding her work history as a police officer. Therefore, in light of plaintiff's concession, defendant's sixteenth motion in limine will be granted. Oral testimony will suffice on this issue, and a printed chronological record would appear to be cumulative and irrelevant.

## Q. Plaintiff's Motion in Limine

Plaintiff moves to exclude six items listed on defendant's exhibit list:

Item 1. "Fletcher Medical Supplies, Inc. personnel records of Plaintiff"

Item 4. "Memo from David Beams to the Plaintiff dated June 22, 2010"

Item 5. "Newspaper article drafted by Bob Fowler"

Item 7. "Entries on the Plaintiff's Facebook account dated February 22, 2012 [sic], February 23, 2010, May 21, 2010, May 22, 2010, June 17, 2010, and July 15, 2010"

Item 10. "Psychological fitness for duty evaluation dated June 28, 2010"

Item 13. "Letter from Federal Investigator Stephen Liston to Christina Targonski dated February 26, 2011"

To some extent, the court can only take plaintiff's motion under advisement. Plaintiff's briefing contains little more than boilerplate law on hearsay, authentication, relevance, unfair prejudice, and lack of personal knowledge. When plaintiff does offer specificity, her arguments appear erroneous. As an example, plaintiff argues that the fifth item she objects to is an EEOC determination with "zero" value. However, the fifth item objected to is actually an in-house psychological evaluation having nothing to do with the EEOC.

In sum, plaintiff has not told the court what her objections are, leaving the court unable to fully rule on her motion at this time. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). With that said, the court will now address plaintiff's motion to the extent possible.

i. *Personnel Records*

Defendant objects to the use of her personnel file from Fletcher Medical Supplies, listed as item one on defendant's exhibit list. In response, defendant states that it only intends to introduce one document from that file, plaintiff's employment application.

Plaintiff claims that she left her employment with defendant because the gender-based hostile work environment became unbearable. Defendant contends that plaintiff's Fletcher Medical application is relevant as to her credibility, because on that application she stated that she stopped working for the defendant because she was

"relocated." In her deposition, plaintiff authenticated the application.

The court must agree that, for the reasoning articulated by defendant, plaintiff's employment application has some probative value regarding the credibility of her complaints. Plaintiff has specified no Rule 403 grounds that would substantially outweigh the application's probative value.

Therefore, to the extent that plaintiff objects to the use of her Fletcher Medical application on grounds of authentication, relevance, or unfair prejudice, her motion will be denied. To the extent that plaintiff intends to object to the introduction of her application on grounds of hearsay or lack of personal knowledge, the court must take the motion under advisement, to be determined in light of the context in which the defense attempts to introduce this exhibit.

ii. *June 22, 2010 Memo*

Plaintiff objects to item four on defendant's exhibit list, a memorandum she received from Chief of Police David Beams on June 22, 2010. That memorandum responded to a June 17 letter from plaintiff. In her letter, plaintiff wrote in material part that her

> emotional state of mind is such that I am unable to perform the simplest tasks of a police officer. I am distracted at work, I feel very depressed when I am at work, and I am currently seeking assistance from a professional therapist due to my continued work-related stress. I do not feel that it would be beneficial for me, or anyone else, for me to continue work as a police officer until the investigation is complete with the EEOC.

Plaintiff requested a temporary transfer to another city department, or paid administrative leave for the duration of the EEOC investigation.

In his June 22 memo, Beams told plaintiff that she was scheduled for a psychological examination in light of the concerns raised in her letter. He also advised plaintiff that she would be assigned to administrative duties pending receipt of the psychologist's report.

In its response to the motion, defendant argues that the memo is relevant to show that it responded to plaintiff's complaints. Plaintiff has specified no Rule 403 grounds that would substantially outweigh that probative value.

Therefore, to the extent that plaintiff objects to the use of the June 22 memo on grounds of relevance or unfair prejudice, her motion will be denied. To the extent that plaintiff intends to object to the introduction of the memo on grounds of hearsay, authentication, or lack of personal knowledge, the court must take the motion under advisement, to be determined in light of the context in which the defense attempts to introduce this exhibit.

### iii. *Newspaper Article*

Plaintiff moves to exclude Bob Fowler's newspaper article. In response, the defense "agrees to not use that newspaper article at the trial of this cause." Plaintiff's motion will be granted as to the Bob Fowler newspaper article.

### iv. *Facebook*

In addition to perhaps arguing that her above-cited Facebook postings have not been authenticated, plaintiff contends that the documents are "impermissible character

evidence" with "essentially zero" relevance and a chance of unfair prejudice of "more than zero." Plaintiff is incorrect.

The Facebook postings with which the court is familiar are neither irrelevant nor are they impermissible character evidence. [Doc. 22, p. 2-3, 19-20]. Instead, the postings are quite relevant to a key trial issue. The court has previously noted, "To be actionable under Title VII, 'a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" [Doc. 22, p.16] (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993))).

In its summary judgment ruling, the court discussed the relevance of plaintiff's Facebook postings.

In November or December of 2009, plaintiff told her supervisor, Sergeant Matthew Tedford, that she suspected Officer John Thomas was spreading sexual rumors about her. Plaintiff claims that Thomas also *directly* told her that her "husband [was] trying to get him [Thomas] to have an orgy" involving Thomas's then-girlfriend, Cassie Bridges, and that "he felt like I was a lesbian and I wanted to be part of it." [Plaintiff deposition, p. 202]. Plaintiff further testified, "After that, of course, that's when people started saying, we know what John is saying about you. That's when the rumors start[ed] coming to me."

. . .

Plaintiff testified at her deposition, "I'm a Christian and I strive really hard to be a moral person. So for someone to start thinking of me as someone who has orgy parties at my house while my son is home, that's severely humiliating to me." Plaintiff further testified that she would never "go out and talk to people

about" such things, even in a joking manner. Curiously, however, on February 23, 2010, plaintiff was herself discussing on Facebook her desire for a female friend to join her "naked in the hot tub." The previous day on her Facebook page, plaintiff was discussing "naked Twister." May 22, 2010 postings on plaintiff's Facebook page by her Facebook "friends" talked about female orgies involving plaintiff, Cassie Bridges, and others, to be filmed by plaintiff's husband.

. . .

Plaintiff claims that Officer Thomas's rumors created a hostile work environment based on her gender, for which defendant should be liable for failing to stop. In response, defendant argues that . . . plaintiff could not possibly have found the workplace rumors to be offensive when she herself was making similar statements on Facebook.

[Doc. 22, p.1-3, 16-17].

The challenged Facebook evidence is not prohibited character evidence offered to prove that plaintiff on a particular occasion acted in accordance with a character or trait by, for example, actually engaging in "naked Twister" or any of the other activities discussed on her Facebook page. Instead, the evidence is relevant to the source of the alleged rumors and to whether plaintiff could truly have found those alleged rumors offensive. Further, as the court has previously noted, plaintiff has herself authenticated the Facebook evidence. [Doc. 22, p.20]. Lastly, the mere fact that evidence is unfavorable to plaintiff does not make that evidence "unfairly prejudicial."

In its motion response, defendant agrees not to use the May 21 and June 17 Facebook entries at trial. Regarding the other challenged entries, plaintiff's motion in limine will be denied for the reasoning provided herein.

<u>v</u>. *Fitness for Duty Evaluation*

Plaintiff moves to exclude the fitness for duty evaluation report prepared by Dr. John Kandilakis.  The defense might use Dr. Kandilakis's video deposition testimony as evidence at trial and, if so, would introduce the report in conjunction with that testimony.  Plaintiff herself introduced Dr. Kandilakis's report as an exhibit to the deposition and had Dr. Kandilakis authenticate the report at that time - a report that he created.

As with the June 22 Beams memo, defendant argues that the report is relevant to show that it responded to plaintiff's complaints.  Plaintiff has specified no Rule 403 grounds substantially outweighing that probative value.  Further, the report would be admissible under the hearsay exception for statements made for medical diagnosis.  *See* Fed. R. Evid. 803(4) (statement made for and reasonably pertinent to medical diagnosis, describing present symptoms and their cause).  Therefore, to the extent that plaintiff objects to the use of the fitness for duty evaluation report, her motion will be denied.

<u>vi</u>. *Liston Letter*

Plaintiff moves to exclude a February 2011 letter she received from EEOC investigator Stephen Liston.  Defendant expressly offers no objection in response.  Plaintiff's motion will be granted as to the February 2011 letter from Mr. Liston.

R. <u>Defendant's Motion for Pretrial Conference</u>

The court's rulings herein render a pretrial conference unnecessary.  "Defendant's Motion for Pretrial Conference" [doc. 54] will therefore be denied.

III.

*Conclusion*

The limited issues remaining before the court bear restating:

A plaintiff may show a violation of Title VII via a hostile work environment claim without having to prove that she suffered an "adverse employment action." *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). The elements of a *prima facie* hostile work environment claim are: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment was based on the employee's gender; (4) the harassment created a hostile work environment; and (5) *respondeat superior* liability. *Clark v. United Parcel Serv.*, 400 F.3d 341, 347 (6th Cir. 2005). Regarding the fifth prong, "[a]n employer is liable if it knew or should have known of the charged [coworker] harassment and failed to implement prompt and appropriate corrective action." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999) (citation and quotations omitted).

[Doc. 22, p. 15-16]. Efforts to expand trial beyond these limited issues will not be tolerated.

An order consistent with this opinion will be entered.

ENTER:


        s/ Leon Jordan        
United States District Judge